Doris H. Durfee *vs.* J. Joseph Nugent, *Attorney General.*

FEBRUARY 13, 1964.

Present: Condon, C. J., Roberts, Powers and Joslin, JJ.

POWERS, J.   This is a petition for dependency benefits brought by the widow of a compensably injured employee pursuant to G. L. 1956, §28-33-12, of the workmen's compensation act.   It is before us on the petitioner's appeal from a final decree of the workmen's compensation commission affirming a decree entered by a single commissioner denying and dismissing her petition.

It appears from the record that on June 24, 1960 Thurman I. Durfee, an employee of this state in the department of public works, division of roads and bridges, sustained a compensable injury and was hospitalized until July 8, 1960. He thereafter continued under the care of Dr. William C. Hartnett, his family physician, and also Dr. George Solas, an orthopedic surgeon who was called into the case because of the nature of the injuries.   According to the preliminary agreement the injuries consisted of "Displaced comminuted Colles fracture, right wrist; undisplaced colles fracture, left wrist; concussion; extensive ragged abrasions and lacerations of face and forehead; multiple abrasions and contusions of body."

It further appears that on February 21, 1961 the employee suffered a myocardial infarction and was again hospitalized.   He was discharged on April 5, 1961 and one week

later, April 12, died at his home of "acute myocardial infarction, acute pulmonary edema and cardiovascular collapse; acute myocardial infarction secondary to acute pulmonary edema, and cardiovascular collapse." He was survived by the petitioner and three adult children. On June 5, 1962 the widow filed the instant petition praying that she be awarded death benefits in accordance with the provisions of G. L. 1956, §28-33-12. Thereafter, on September 13, 1962, a hearing was held before a single commissioner.

Doctor Hartnett testified that he continued to treat Mr. Durfee after his discharge from the hospital in July 1960 and was called by petitioner when her husband complained of a severe chest pain on February 21, 1961. His diagnosis of myocardial infarction was substantiated by electrocardiograms and blood tests. It appears from his testimony that Durfee never returned to work after the accident of June 24, 1960 and that he remained under care and treatment at the hospital until he was discharged on April 5, 1961.

The doctor further testified that in his opinion the stress of anxieties regarding Durfee's own health, that of his wife, and financial problems resulting from prolonged unemployment were contributing factors to the death of his patient. Asked specifically, he replied, "In my opinion, the accident was a contributing factor to his death."

In cross-examination his attention was called to the cause of death as set forth in the official certification as follows, "Myocardial infarction [-] 2 months [;] Arteriosclerotic heart disease [-] unknown." He was then asked if the arteriosclerotic heart condition was caused by the traumatic injury of June 1960, to which he replied in the negative. He felt, however, that although there are two schools of thought on the subject the accident was a predisposing factor in that it contributed to bringing on the myocardial infarction.

His testimony regarding the anxieties and strain experienced by the deceased was corroborated in detail by petitioner and two of their children. There were also received in evidence the preliminary agreement and hospital reports, as well as two reports of Dr. Solas. His second report, dated January 26, 1961, indicated that, except for continued difficulties with his right wrist, the patient had recovered from the injuries sustained on June 24, 1960, and he expected to have Mr. Durfee return to work as a laborer within four to six weeks.

The medical and hospital records, together with the transcript of the hearing as thus compiled, were submitted by the single commissioner to Dr. John C. Ham, a specialist in internal medicine, requesting his opinion as to whether there was any causal connection between the injuries sustained in the course of decedent's employment and his subsequent death. The record discloses that Dr. Ham submitted a report in writing wherein he referred in some detail to the two schools of thought previously mentioned by Dr. Hartnett, and stated that there was no causal connection between the compensable injuries and death.

The hearing was then resumed and Dr. Ham's report was made part of the record. In cross-examination Dr. Ham conceded that medical science could neither prove nor disprove that emotional stress, anxiety or tension were ever factors contributing to a myocardial infarction. In conclusion, however, he stated, "but it's been studied pretty carefully and the evidence that I have been able to glean from the literature and talking with people who are, — have had such experiences, and through my own, — I don't find any evidence that that does happen."

On the state of the foregoing record, the single commissioner found as a fact that petitioner had failed to prove a causal connection between the compensable injuries and the death of the employee by a fair preponderance of the cred-

ible evidence. He entered a decree containing said finding and ordering the petition denied and dismissed.

The petitioner has compressed her reasons of appeal into two precise issues and it is in that posture that they are herein considered.

The first issue raises the question of whether the single commissioner misconceived the medical evidence in finding that the injury of June 24, 1960 did not cause nor contribute to the death of petitioner's husband. She contends that there was no conflict in the testimony of Doctors Hartnett and Ham and quotes Dr. Hartnett's testimony wherein he discussed the division of opinion between two groups of medical men. One such group, he acknowledged, held to the belief that emotional stress, anxiety or tension were not contributing factors where death resulted from a myocardial infarction and the other, to which he subscribed, were of the opinion that they were. Neither group, he testified, had as yet been proven to be either right or wrong. It was his opinion, however, that such factors could contribute and that they did so contribute to the myocardial infarction which caused the death of petitioner's husband.

Doctor Ham, she argues, also acknowledged that there were two such groups and also conceded that neither had been proven either to be correct or in error.

It is on this common ground of agreement that we understand petitioner bases her contention that there was no conflict in the medical evidence. From their respective testimony, it is apparent that Doctors Hartnett and Ham were agreed that, on the basis of knowledge presently available, medical science recognizes the existence of two divergent theories, neither of which is so susceptible of irrefutable proof as to render the other untenable. It is equally clear, however, that they held diametrically opposed opinions as to which theory is the more persuasive.

The courts have long acknowledged that a man's opinion,

is as certainly a fact as is the state of his digestion and it was on his conclusion that one opinion offset the other that the single commissioner found petitioner had failed to sustain her burden of proof. For this court to hold that the single commissioner, or on a review of his findings the full commission, misconceived the medical evidence would be tantamount to weighing such evidence, which by statute we are prohibited from doing. G. L. 1956, §28-35-30.

The second and remaining issue is raised by the question of whether the single commissioner placed too great a burden of proof on petitioner. She contends, as we understand her, that the single commissioner and the full commission failed to distinguish between the proof required to establish the accident as the sole cause of death and that which would prove the accident to have been a contributing factor. In this regard, she cites *Palmer* v. *Friendly Pharmacy, Inc.*, 84 R. I. 98, and the cases referred to therein. They stand for the proposition that an injured employee need only prove that the nature or condition of his employment contributed to the accident or injury.

We are in full accord with the principle enunciated in those cases but they are of no assistance to her. It was on a failure of proof that the compensable injury sustained by her husband contributed to his death that the full commission affirmed the decree of the single commissioner. As previously observed, the evidence of a causal connection was confined to conflicting medical opinions. In the same manner that we are precluded by the statute from weighing the evidence, we are not warranted in finding that the single commissioner erred in his evaluation of the opinions as given.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Moses Kando,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for respondent.